UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO, JR.,<br><br>                                   Plaintiff,<br><br>v.<br><br> OFFICER HODGE et al.,<br><br>                                 Defendants. | Case No.: 14-cv-590 JLS (JLB)<br><br>**REPORT AND RECOMMENDATION:**<br><br>**(1) GRANTING DEFENDANTS'<br>MOTION TO DISMISS CLAIMS<br>AGAINST DEFENDANTS GLYNN<br>AND SEELEY; and**<br><br>**(2) GRANTING DEFENDANTS'<br>MOTION TO DISMISS CLAIMS<br>AGAINST DEFENDANT ZAMORA**<br><br>**[ECF Nos. 63, 69]** |

## I. INTRODUCTION

Plaintiff Raul Arellano, Jr., a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Third Amended Complaint on July 16, 2015, alleging civil rights violations pursuant to 42 U.S.C. § 1983 against Defendants J. Chau, M. Glynn, D. Hodge, F. Sedighi, K. Seeley, P. Velardi, and L. Zamora.   (ECF No. 59.)   Presently before the Court are Defendants' Motion to Dismiss the claims asserted in Plaintiff's Third Amended Complaint against Defendants Glynn and Seeley (ECF No. 63) and Defendants' Motion to Dismiss the claims asserted in Plaintiff's Third Amended Complaint against Defendant

Zamora (ECF No. 69).  As the same claims are at issue in both of Defendants' Motions to Dismiss, the Court finds it appropriate to address the motions together in this Report and Recommendation.

The Court submits this Report and Recommendation to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the Local Rules of Practice for the United States District Court for the Southern District of California.  After a thorough review of Plaintiff's Third Amended Complaint, the parties' motion papers, and all supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that both of Defendants' Motions to Dismiss (ECF Nos. 63 and 69) be **GRANTED**.

## II. FACTUAL BACKGROUND[1]

Plaintiff is a state prisoner currently confined at the Richard J. Donovan Correctional Facility ("RJDCF") in San Diego.  (ECF No. 59 at 1.)[2]  Prior to arriving at the RJDCF, Plaintiff was confined temporarily at a San Diego County jail and then at the Calipatria State Prison.  (*Id.* at 11–13.)  He was transferred to the RJDCF in or around December 2011.  (*Id.* at 13.)

### A.    Plaintiff's Medical History

In or around November 2010, Plaintiff was arrested in Mexico by an agency contracted to arrest U.S. citizens with outstanding arrest warrants.  (*Id.* at 11.)  The Mexican officers physically abused Plaintiff for several days before handing him over to authorities in San Diego.  (*Id.*)  The abuse was so severe that it caused Plaintiff to begin having seizures.  (*Id.*)

---

[1] Plaintiff's allegations contained in the Third Amended Complaint are accepted as true for purposes of assessing Defendants' Motions to Dismiss only.  In addition, this Report and Recommendation does not provide a summary of all of the facts presented in Plaintiff's Third Amended Complaint but only those that are relevant to Plaintiff's claims against Defendants Glynn, Seeley, and Zamora.

[2] All page number citations in this Report and Recommendation refer to the page numbers generated by the CM/ECF system.

Approximately one-and-one-half months after being confined at the San Diego County jail, Plaintiff again began having seizures. (*Id.* at 12.) He had been regularly experiencing numbness and "sharp stabbing" pain in his back and on the left side of his head, and every time he had a seizure, the pain in these locations increased significantly and lasted for seven to eight days. (*Id.*) After that, the pain would "come[] down to the normal numbness and stabbing pain," which he was "able to control better with medication." (*Id.*)

As a result of his seizures, pain, and numbness, Plaintiff was taken to a hospital approximately four times while confined at the San Diego County jail. (*Id.*) There, he was told by "doctors, [a] specialist, [a] neurologist, and everyone that stud[ied him]" that he had "head nerve damage" as a result of the abuse he suffered by the Mexican officers. (*Id.*) He was also told that he experienced increased pain following his seizures due to the nerve damage. (*See id.*)

While confined at the San Diego County jail, Plaintiff was prescribed Gabapentin "and other strong medication for [his] pain," which helped reduce both the frequency of Plaintiff's seizures and the severity of pain that would follow. (*See id.* at 12–14.) He was provided these medications at the Calipatria State Prison as well. (*Id.* at 13.) Upon Plaintiff's transfer to the RJDCF, the medications were replaced with others that are less effective at managing Plaintiff's seizures and accompanying pain. (*Id.* at 13.)

In March 2012, while at the RJDCF, Plaintiff suffered a seizure that caused him to fall from the top bunk of his cell, hit a metal table, and injure his lower back. (*Id.*) The pain in Plaintiff's lower back was severe, and it prevented Plaintiff from walking to his meals for several weeks. (*Id.*)

In or around June 2012, Plaintiff saw Defendant Sedighi, a doctor at the RJDCF, about the increased frequency of his seizures, the constant numbness and pain in his back and head, the increased pain in his back and head after having a seizure, and the negative side effects he experiences while taking the medications prescribed to him at the RJDCF. (*Id.* at 13–14.) He also discussed with Defendant Sedighi his lower back pain resulting

from his March 2012 fall and the neuropathy he experiences in his feet. (*Id.* at 14–15.) He asked to be prescribed the medications he was provided at the San Diego County jail and the Calipatria State Prison, or something similar, and Defendant Sedighi denied his request. (*Id.* at 14.) Defendant Sedighi also denied Plaintiff's requests for treatment of his lower back pain and for therapeutic shoes to treat his neuropathy. (*Id.* at 14–15.)

Unsatisfied with the results of his visit with Defendant Sedighi, Plaintiff then saw Defendant Chau, another doctor at the RJDCF, in or around August 2012. (*Id.* at 19.) Plaintiff relayed to Defendant Chau all of the information he shared with Defendant Sedighi. (*Id.* at 19–21.) Defendant Chau denied Plaintiff's requests for the medications he received at the San Diego County jail and the Calipatria State Prison, for treatment of his lower back pain, and for therapeutic shoes. (*Id.*)

## B. Plaintiff's Administrative Grievances

Plaintiff filed a grievance regarding the care provided to him by Defendants Sedighi and Chau via the RJDCF's three-tiered administrative grievance process. In his initial grievance, Plaintiff requested: (1) compensation of $250,000 for the injury he sustained from falling from the top bunk; (2) nerve pain medication; and (3) stronger pain medication for his back. (*Id.* at 32.) He also mentioned that he is "a seizure patient receiving the wrong medication," that he is a diabetic, that his legs and arms get numb quickly, and that his feet hurt when he walks. (*Id.* at 32–34.)

Plaintiff's grievance was accepted at the first level of review on October 3, 2012, and Plaintiff was interviewed about the issues raised in his grievance by Defendant Velardi, a Nurse Practitioner at the RJDCF, on October 26, 2012. (*Id.* at 38.) On November 13, 2012, Plaintiff's requests for nerve pain medication and stronger back pain medication were granted. Defendant Velardi noted in the written response to Plaintiff's grievance that Plaintiff has "no history of spondylosis or nerve impingement," Plaintiff's "back examination was normal," Plaintiff "exhibited localized musculoskeletal lower back pain," and Plaintiff "would continue to receive the medication Sulindac (Clinoril) and [he] would also be given prescriptions for the medications Keppra (Levetiracetam) and Amitriptyline

(Elavil)." (*Id.* at 38–39.) Plaintiff's request for monetary compensation was found to be beyond the scope of the appeals process and was not addressed. (*Id.*)

Plaintiff then submitted a grievance to the second level of review. (*Id.* at 31, 35.) In this grievance, Plaintiff stated that: (1) he disagreed with the denial of his requested compensation; (2) he should be provided the "neurotens"[3] he was provided by a neurologist at the Calipatria State Prison; (3) he believes a deeper analysis needed to be done as to the spondylosis and nerve impingement findings because he continues to have numbness in his legs and arms and pain in his feet; and (4) his lower back pain resulting from his March 2012 fall continues to persist and he should be provided stronger pain medication. (*Id.*)

Plaintiff's second-level grievance was accepted on February 12, 2013, and reviewed by Defendant Glynn, Chief Executive Officer of the RJDCF, and Defendant Seeley, Chief Medical Executive of the RJDCF. (*Id.* at 40–41; 46.) Defendants Glynn and Seeley issued their response to Plaintiff's second-level grievance on May 21, 2013. (*Id.* at 40.) The response states that Plaintiff's "appeal with attachment(s), Unit Health Record (UHR), and all pertinent departmental policies and procedures were reviewed," and it references both the interview and written response Plaintiff was provided in response to his first-level grievance. (*Id.*) Specifically, Defendants Glynn and Seeley's response notes, "[B]ased on

---

[3] Although not material to the Court's determination, the Court interprets Plaintiff's reference to "neurotens" as a reference to Neurontin, a common brand name for the medication Gabapentin. *See Gabapentin*, U.S. NAT'L LIBR. MED., https://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html (last updated July 11, 2016). On July 18, 2016, the Court provided the parties notice of the Court's intent to rely on this resource and gave the parties until July 25, 2016, to respond. (ECF No. 103.) On July 21, 2016, Defendants filed a response in which they took no position on the Court's use of the outside source material, except to assert that "specific information about Gabapentin should make no difference" as to the merits of the motion. (ECF No. 105.) The Court will interpret this as a relevance objection. On July 28, 2016, Plaintiff filed a response to Defendants' response, in which Plaintiff took no position on the Court's reliance on outside source materials, and which Plaintiff instead used to reiterate his substantive arguments in opposition to the Motions to Dismiss. (ECF No. 108.) In light of the Court's targeted and tertiary use of the website information—merely to point out that Plaintiff's interchangeable uses of "neurotens" and "Gabapentin" both appear to refer to "Neurontin"—Defendants' relevance objection is overruled. Because neither side was invited to engage in further merits briefing, arguments on the merits found in ECF Nos. 105 and 108 will not be considered.

the Primary Care Providers interview and exam, you are being treated adequately for your back pain which is musculoskeletal in nature. You are currently being treated for diabetes and it is in good control . . . . At the First Level of Review this appeal was Partially Granted." (*Id.* at 40.) After noting that Plaintiff did "not provide[] any new information or documentation that would alter the 1st level review findings," Defendants Glynn and Seeley partially granted Plaintiff's grievance and denied his request for monetary compensation. (*Id.* at 40–41.)

Plaintiff then submitted a grievance to the third and final level of review. (*Id.* at 31, 35.) In this grievance, Plaintiff stated that: (1) he was dissatisfied with the second-level response because of its failure to grant the compensation he requested; (2) he is unable to provide any new documentation that will alter the first level of review because all of the documentation he possesses was attached to his first-level grievance; (3) that the primary care provider told him the medication she was providing him was meant to be temporary, and Plaintiff should let her know if it was not working; and (4) the purpose of his filing the grievances was to alert the RJDCF medical staff that his current medication is not working. (*Id.*) Plaintiff again requested stronger pain medication for his back, nerve pain medication to alleviate the neuropathy in his feet, and "neurotens" to alleviate the nerve damage that is connected to his seizures. (*Id.* at 35.)

Plaintiff's third-level grievance was reviewed by the staff of Defendant Zamora, Chief of the California Correctional Health Care Services at the Office of Third Level Appeals-Health Care, and signed by Defendant Zamora. (*Id.* at 36–37.) Defendant Zamora's October 16, 2013 response to Plaintiff's third-level grievance states that Plaintiff's "appeal file and documents obtained from [his] electronic Unit Health Record (eUHR)" indicated:

- Your care related to your appeal issues was adequate, as you received medical treatment and medication was provided as deemed appropriate for your condition.

- You were evaluated on February 12, 2013 and again on May 21, 2013 for seizure disorder and diabetes.  It was noted your seizure disorder is currently managed on Keppra, and your diabetes is well controlled with Metformin.  You are receiving Elavil for your chronic back pain, which is musculoskeletal in nature, as you currently do not meet non-formulary criteria for gabapentin.

- On June 20, 2013 you were assessed by a clinician for a Medical Classification Chrono.  You were issued a 128C3 for limited duty and high risk for seizure disorder on precautions for job assignment.

- Inmates may not demand particular medication, diagnostic evaluation, or course of treatment.  The California Code of Regulations (CCR), Title 15, Section 3354, Health Care Responsibilities and Limitations, (a) Authorized Staff, states, 'Only facility-employed health care staff, contractors paid to perform health services for the facility, or persons employed as health care consultants shall be permitted within the scope of their licensure, to diagnose illness or, prescribe medication and health care treatment for inmates.  No other personnel or inmate may do so.

- Monetary compensation is beyond the scope of the appeals process. . . .

- You are being evaluated, treated, monitored, and educated concerning your appeal issues consistent with the medical plan of care as determined by your PCP, specialists, and other diagnostic tests and screenings.  You will continue to be evaluated and treatment will be provided based on your current clinician's evaluations, diagnosis, and recommended treatment plan, in accordance with appropriate policies and procedures.

(*Id.*)

The response concluded that "[a]fter review, no intervention at the Director's Level of Review is necessary as your medical condition has been evaluated and you are receiving treatment deemed medically necessary" and ordered that "[n]o changes or modifications are required by the institution."  (*Id.* at 37.)

### III. PROCEDURAL BACKGROUND

Plaintiff initiated the present suit by filing a complaint in this Court on March 13, 2014.  (ECF No. 1.)  Plaintiff filed his Third Amended Complaint on July 16, 2015, naming J. Chau, M. Glynn, D. Hodge, F. Sedighi, K. Seeley, P. Velardi, and L. Zamora as

7

defendants.  (ECF No. 59.)  With respect to Defendants Glynn, Seeley, and Zamora, the subjects of the Motions to Dismiss presently before the Court, Plaintiff alleges the Defendants violated his constitutional rights to freedom from cruel and unusual punishment and to equal protection.  (*Id.* at 23–26.)

On October 16, 2015, Defendants moved to dismiss the claims in Plaintiff's Third Amended Complaint asserted against Defendants Glynn and Seeley.  (ECF No. 63.) Plaintiff filed an Opposition to the Motion to Dismiss on January 11, 2016 (ECF No. 72), and Defendants filed a Reply to Plaintiff's Opposition on January 20, 2016 (ECF No. 73).

On December 21, 2015, Defendants moved to dismiss the claims in Plaintiff's Third Amended Complaint asserted against Defendant Zamora.  (ECF No. 69.)  Plaintiff filed an Opposition to the Motion to Dismiss on January 25, 2016 (ECF No. 76), and Defendants filed a Reply to Plaintiff's Opposition on January 28, 2016 (ECF No. 77).

Defendants have not yet responded to the claims raised in Plaintiff's Third Amended Complaint against Defendants Chau, Hodge, Sedighi, and Velardi.  In addition, Defendants contend Defendant Velardi has not been served.  (ECF No. 63-1 at 1; ECF No. 69-1 at 2.)

## IV. DISCUSSION

### A.    Legal Standards

1.    Motion to Dismiss for Failure to State a Claim

The Federal Rules of Civil Procedure require that a plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The pleading standard Rule 8 announces does not require detailed factual allegations, and the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citing *Twombly*, 550 U.S. at 555).

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the

claims in the complaint.  *Twombly*, 550 U.S. at 555.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008).  The "mere possibility of misconduct" falls short of meeting this plausibility standard.  *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

In ruling on a Rule 12(b)(6) motion to dismiss, the court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The court may consider allegations contained in the pleadings, exhibits attached to the complaint, and documents and matters properly subject to judicial notice.  *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007).  The court must assume the truth of the facts presented and construe all inferences from them in the light most favorable to the nonmoving party.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  However, the court is "not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

### 2.   Standards Applicable to *Pro Se* Litigants

With respect to an inmate who proceeds *pro se*, his factual allegations, "however inartfully pleaded," "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Erickson*, 551 U.S. at 94 (reaffirming that this standard applies to *pro se* pleadings post-*Twombly*).  Thus, where a plaintiff appears *pro se* in a civil rights case, the Court must construe the pleadings

9

liberally and afford plaintiff any benefit of the doubt.  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  However, in giving liberal interpretation to a *pro se* civil rights complaint, courts may not "supply essential elements of claims that were not initially pled."  *Ivey v. Bd. of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim."  *Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984).

Before dismissing a *pro se* civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure.  *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir.1988).  Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend.  *Id.*; *see also James v. Giles*, 221 F.3d 107, 1077 (9th Cir. 2000).

**B.    Analysis**

   1.    Cruel and Unusual Punishment

Plaintiff's Third Amended Complaint alleges that Defendants Glynn and Seeley's response to Plaintiff's second-level grievance, and Defendant Zamora's response to Plaintiff's third-level grievance, violated Plaintiff's constitutional right to freedom from cruel and unusual punishment.  (ECF No. 59 at 23–26.)  Defendants argue Plaintiff's Eighth Amendment claims against Defendants Glynn, Seeley, and Zamora should be dismissed because Plaintiff's Third Amended Complaint fails to allege sufficient facts to state plausible deliberate indifference claims against the Defendants.  (ECF No. 63-1 at 6–8; ECF No. 69-1 at 6–8.)

      i.    *Applicable Law*

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they act with deliberate indifference to an inmate's serious medical needs.  *Wilson v. Seiter*, 501 U.S. 294, 302 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Deliberate indifference to an inmate's serious medical needs may be

manifested in two ways: the intentional denial, delay, or interference with a plaintiff's medical care, or by the manner in which the medical care was provided. *See Estelle*, 429 U.S. at 104–05. In either case, the indifference to the inmate's medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2002).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. The "existence of any injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc); *accord Lopez v. Smith*, 203 F.3d 1122, 1131–32 (9th Cir. 2000); *Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). As Defendants do not dispute that Plaintiff adequately alleges a serious medical need in his Third Amended Complaint and instead base their Motions to Dismiss on the Eighth Amendment's deliberate indifference prong (*see* ECF No. 63-1 at 6–8; ECF No. 69-1 at 6–8), for purposes of assessing Defendants' Motions to Dismiss, the Court assumes that Plaintiff's medical needs are serious.

In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind. *See Wilson*, 501 U.S. at 300–02. "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 837). The court must focus on "what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." *Farmer*, 511 U.S. at 838–39. "Even if a prison official *should* have been aware of the risk, if he 'was not, then he has

not violated the Eighth Amendment, no matter how severe the risk.'" *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 946 (2015) (quoting *Gibson v. Cnty. Of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

The subjective standard for deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "[A]n *inadvertent* failure to provide adequate medical care by itself [does not] create a cause of action under § 1983. A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin*, 974 F.2d at 1060.

Differences in judgment between a prisoner and a prison official regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Estelle*, 429 U.S. at 107–08; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). In addition, a prison official's reliance on the medical opinions of other qualified staff, when the official serves in an administrative role and has no expertise to contribute his own medical opinion, is not deliberate indifference. *See Peralta*, 744 F.3d at 1087.

### ii.   Defendants Glynn and Seeley

Plaintiff's Third Amended Complaint alleges Defendants Glynn and Seeley's response to Plaintiff's second-level grievance violated his Eighth Amendment right to be free from cruel and unusual punishment. (*See* ECF No. 59 at 23–24.) In support of these claims, Plaintiff alleges that it was "obvious" from his second-level grievance that Plaintiff was in a lot of pain, and that by relying on the interview and examination of Plaintiff conducted at the first level of review, Defendants Glynn and Seeley "totally ignored everything [Plaintiff] wrote on his grievance." (*Id.* at 24.) Plaintiff further alleges that Defendants Glynn and Seeley "left [him] to suffer for many months because they received [his] grievance on 2-7-2013 but didn't address[ it] until 5-21-2013." (*Id.*)

Plaintiff attached as exhibits to his Third Amended Complaint copies of his second-level grievance and Defendants Glynn and Seeley's response thereto (ECF No. 59 at 30–

35; 40–41), and both Plaintiff and Defendants reference these documents in their pleadings and motion papers (*see, e.g.*, ECF No. 59 at 23–24; ECF No. 63-1 at 6–8).  Therefore, in assessing Defendants' Motions to Dismiss, the Court considers the documents themselves in addition to the factual allegations pled in Plaintiff's Third Amended Complaint.  *See Outdoor Media Group*, 506 F.3d at 899 (holding courts may consider allegations contained in exhibits attached to the complaint).

Upon a thorough review of Plaintiff's Third Amended Complaint and the documents attached thereto, the Court finds Plaintiff fails to plead facts supporting a plausible deliberate indifference claim against Defendants Glynn and Seeley.  First, Plaintiff fails to plead any facts from which the Court may draw the reasonable inference that Defendants Glynn and Seeley knew of an excessive risk of harm to Plaintiff's health.  While Plaintiff's Third Amended Complaint alleges the Defendants—by virtue of their reviewing Plaintiff's second-level grievance—*should have been* aware that Plaintiff was in a lot pain, the court must focus on "what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)."  *Farmer*, 511 U.S. at 838–39.  Defendants' second-level response attached to the Third Amended Complaint indicates the Defendants were not aware of an excessive risk of harm to Plaintiff's health.  The response states that, upon reviewing Plaintiff's appeal file, Defendants Glynn and Seeley learned that Plaintiff was "allowed the opportunity to fully explain [his] appeal issue(s)" during his first-level review interview, and the primary care provider who interviewed and examined Plaintiff at the first level of review, Defendant Velardi, concluded that Plaintiff is being treated adequately for his back pain and diabetes and granted Plaintiff's requests for nerve pain medication and stronger pain medication.  (ECF No. 59 at 38–39; 40–41.)  Therefore, the second-level response demonstrates that it was Defendants Glynn and Seeley's understanding that all of the medical issues Plaintiff complained of in his grievance were adequately assessed and remedied at the first level of review, and "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.

14-cv-590 JLS (JLB)

Even if Plaintiff had adequately alleged that Defendants Glynn and Seeley knew of an excessive risk of harm to Plaintiff's health, the Third Amended Complaint still fails to meet the threshold for stating a plausible Eighth Amendment Claim.   To survive Defendants' Motion to Dismiss, the Third Amended Complaint must allege facts that support a reasonable inference that Defendants Glynn and Seeley not only knew of an excessive risk of harm to Plaintiff's health but also *purposefully* disregarded it.   *See Farmer*, 511 U.S. 842.   The allegations in the Third Amended Complaint fail to demonstrate that Defendants Glynn and Seeley purposefully disregarded any risk of harm to Plaintiff's health.   To the contrary, the second-level response demonstrates Defendants Glynn and Seeley reviewed and considered Plaintiff's grievance and appeal file in full and issued a written response in accordance with the findings of Defendant Velardi, a medical professional, that Plaintiff's medical conditions were being treated adequately.

To the extent Plaintiff alleges Defendants Glynn and Seeley should have conducted an independent examination of Plaintiff at the second level of review instead of relying on the interview and examination conducted at the first level of review, such allegations fail to state a plausible deliberate indifference claim.   Defendants Glynn and Seeley are not medical doctors (ECF No. 63-1 at 7), and they reviewed Plaintiff's second-level grievance in their capacities as prison administrators.   It is not deliberate indifference for prison officials serving in administrative roles to rely on the opinions of qualified medical staff in responding to a plaintiff's second-level grievance.   *See Peralta*, 744 F.3d at 1087; *see also Doyle v. Cal. Dep't of Corr. and Rehab.*, No. 12-cv-2769-YGR, 2015 WL 5590728, at *9 (N.D. Cal. Sept. 23, 2015) ("It simply cannot be said that, by signing off on the denials at the second . . . level[], defendants . . . disregarded a substantial risk of harm to [plaintiff]'s health by failing to take reasonable steps to abate it.").

Furthermore, Plaintiff's collateral argument that Defendants were deliberately indifferent when they were late in responding to Plaintiff's grievance also fails to state a plausible Eighth Amendment claim.   This collateral theory fails because Plaintiff fails to plead any facts that suggest the Defendants' tardiness was purposeful or anything more

than a mere inadvertence.  The "mere possibility of misconduct" falls short of meeting the standard for alleging a plausible claim, *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008), and although the Court must construe Plaintiff's complaint liberally, *see Hebbe*, 627 F.3d at 338, it may not "supply essential elements of claims that were not initially pled."  *See Ivey v. Bd. of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Accordingly, the Court finds that Plaintiff's Third Amended Complaint fails to plead plausible deliberate indifference claims against Defendants Glynn and Seeley and recommends that, with respect to these claims, Defendants' Motion to Dismiss (ECF No. 63) be **GRANTED**.  In addition, as it is clear the Third Amended Complaint's deficiencies with respect to these claims cannot be cured by amendment, the Court recommends Plaintiff's Eighth Amendment claims against these Defendants be **DENIED with prejudice**.

### iii.   Defendant Zamora

Plaintiff's Third Amended Complaint alleges Defendant Zamora's response to Plaintiff's third-level grievance also violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  In support of this claim, Plaintiff alleges that he disagrees with Defendant Zamora's denial of his third-level grievance because it is contrary to Plaintiff's own opinions about his medical needs.  (*See* ECF No. 59 at 25–26.)

Plaintiff attached as exhibits to his Third Amended Complaint copies of his third-level grievance and Defendant Zamora's response thereto (ECF No. 59 at 30–35; 36–37), and both Plaintiff and Defendants reference the documents in their pleadings and motion papers (*see, e.g.*, ECF No. 59 at 25–26; ECF No. 69-1 at 6–8).  Therefore, in assessing Defendants' Motions to Dismiss, the Court considers the documents themselves in addition to the factual allegations raised in Plaintiff's Third Amended Complaint.  *See Outdoor Media Group*, 506 F.3d at 899.

Upon a thorough review of Plaintiff's Third Amended Complaint and the documents attached thereto, the Court finds Plaintiff fails to plead any facts that support a plausible

deliberate indifference claim against Defendant Zamora.   First, the Third Amended Complaint fails to plead any facts that suggest Defendant Zamora herself performed any action that would have caused her to become aware of the existence of an excessive risk to Plaintiff's health.   Although Defendant Zamora signed the response to Plaintiff's third-level grievance, she did not herself review Plaintiff's appeal file.   The third-level response expressly states that the grievance "was reviewed . . . by staff under the supervision of the Chief, Office of Third Level Appeals-Health Care," that is, by Defendant Zamora's staff.  (ECF No. 59 at 36.)   Thus, Plaintiff's allegation that Defendant Zamora knew Plaintiff was in pain because she "should have seen [this]. . . on [his] grievance" is undercut by the fact that Defendant Zamora did not herself review Plaintiff's grievance.

Second, the Court cannot reasonably infer from the Third Amended Complaint that Defendant Zamora became aware of an excessive risk of harm to Plaintiff's health via the information her staff communicated to her.   The third-level response attached to Plaintiff's Third Amended Complaint states that the information communicated to Defendant Zamora by her staff indicated that Plaintiff's care related to his grievance issues is adequate, he is receiving ongoing medical care, his seizure disorder is being managed by medication, he is receiving pain medication, he did not meet the criteria for Gabapentin, his medical care is consistent with the medical plan of care as determined by his primary care provider, specialists, and other diagnostic tests and screenings, and he would continue to be monitored and treated in accordance with appropriate policies and procedures.  (*Id.* at 36–37.)   Thus, the information Defendant Zamora's staff provided to her suggests that Defendant Zamora knew not that a substantial risk of harm to Plaintiff's health existed, but rather that all of the medical issues Plaintiff raised in his third-level grievance had been adequately assessed and remedied at a lower level of review.

Third, the fact that Defendant Zamora's response to Plaintiff's third-level grievance offers a difference in judgment from Plaintiff's own assessment of his medical needs is not enough to establish a deliberate indifference claim.  *See Estelle*, 429 U.S. at 107; *Sanchez*, 891 F.2d at 242.

16

Fourth, as stated above, it is not deliberate indifference for a prison administrator, who is not a medical doctor, to rely on the medical opinions of other qualified staff. *See Peralta*, 744 U.S. at 1087. Therefore, the Third Amended Complaint fails to allege facts from which the Court can reasonably infer that Defendant Zamora was deliberately indifferent to Plaintiff's serious medical needs by virtue of her reliance on her staff's opinions.

Furthermore, to the extent Plaintiff relies on the theory that Defendant Zamora has liability for any alleged deliberate indifference by a member of Defendant Zamora's staff with respect to Plaintiff's serious medical needs, the Third Amended Complaint fails to allege any facts suggesting that Defendant Zamora would be liable for such conduct. Supervisors are not vicariously liable for the constitutional violations of their subordinates under section 1983. *Peralta*, 744 F.3d at 1085–86 (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir.1989)); *see also Iqbal*, 556 U.S. at 676 ("[V]icarious liability is inapplicable to . . . § 1983 suits."). Supervisory prison officials may only be held liable for the allegedly unconstitutional violations of a subordinate if a plaintiff sets forth allegations in his complaint that show: (1) how or to what extent the supervisor personally participated in or directed a subordinate's actions, and (2) in either acting or failing to act, the supervisor was an actual and proximate cause of the deprivation of the plaintiff's constitutional rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff's Third Amended Complaint fails to allege any facts that suggest Defendant Zamora directed her staff to be deliberately indifferent in responding to Plaintiff's medical needs or otherwise personally participated in any deliberately indifferent conduct of her staff.

Accordingly, the Court finds that Plaintiff's Third Amended Complaint fails to sufficiently plead a deliberate indifference claim against Defendant Zamora and recommends that, with respect to this claim, Defendants' Motion to Dismiss (ECF No. 69) be **GRANTED**. In addition, as it is clear the deficiencies in Plaintiff's Third Amended Complaint with respect to this claim cannot be cured by amendment, the Court recommends Plaintiff's Eighth Amendment claim against Defendant Zamora be **DENIED**

**with prejudice**.

       2.   <u>Equal Protection</u>

      Plaintiff's Third Amended Complaint alleges that Defendants Glynn and Seeley's response to Plaintiff's second-level grievance, and Defendant Zamora's response to Plaintiff's third-level grievance, violated his constitutional right to equal protection. (ECF No. 59 at 23–26.)  Defendants argue Plaintiff's claims against Defendants Glynn, Seeley, and Zamora should be dismissed because Plaintiff's Third Amended Complaint fails to allege sufficient facts to state equal protection claims against the Defendants.  (ECF No. 63-1 at 8–9; ECF No. 69-1 at 8–9.)

          *i.*    *Applicable Law*

      The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated a like." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  A plaintiff may state a claim under § 1983 for a violation of the Equal Protection Clause in two ways.  First, a plaintiff may show that a defendant acted with an intent or purpose to discriminate against the plaintiff based upon his membership in a protected class, such as race. *Barren v. Harrington*, 152 F.3d 1193, 1194–95 (9th Cir. 1998).  Second, if the action in question does not involve a plaintiff's membership in a suspect class, a plaintiff may establish an equal protection claim under the "class of one" theory by showing he was intentionally treated differently from other similarly situated individuals without a rational basis for the difference in treatment.  *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 601 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007).  "A class of one plaintiff must show that the discriminatory treatment 'was intentionally directed just at him, as opposed to being an accident or a random act.'" *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th

Cir. 2008) (quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001)).  A class of one claim is premised on the theory that "defendants . . . harbor animus against [plaintiff] in particular and therefore treated [him] arbitrarily."  *Lazy Y Ranch Ltd. V. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

### ii.   *Defendants Glynn and Seeley*

Upon a thorough review of Plaintiff's Third Amended Complaint and the documents attached thereto, the Court finds Plaintiff fails to plead any facts that support a plausible equal protection claim against Defendants Glynn and Seeley under either of the two available theories.  For Plaintiff to have alleged a plausible equal protection claim against Defendants Glynn and Seeley under the theory that he was intentionally discriminated against based upon his membership in a protected class, Plaintiff would have had to allege that the Defendants intentionally discriminated against him based on his membership in a protected class, such as a certain race, national origin, or religion.  The allegations pled in the Third Amended Complaint fail to make this showing.  While the Third Amended Complaint alleges that Plaintiff is a member of a protected class, the Hispanic race (*see* ECF No. 59 at 7), it fails to allege any facts that suggest Defendants Glynn and Seeley acted with the intent or purpose to discriminate against Plaintiff based upon his being Hispanic.

For Plaintiff to have alleged a plausible equal protection claim against Defendants Glynn and Seeley under a class-of-one theory, Plaintiff would have had to allege that Defendants Glynn and Seeley "harbored animus" against him individually and intentionally treated Plaintiff differently from other similarly situated individuals without any rational basis for the different treatment.  The allegations raised in the Third Amended Complaint fail to make this showing.  While the Third Amended Complaint alleges facts that suggest Plaintiff was treated differently from other similarly situated prisoners—"I am treated different than others because all other inmates were getting my old type of medication I used to get for his symptoms," "others are taking Gabapentin or other type of seizure medication when the Keppra was not working for them or had bad side effects from

it," "others with the same problems are getting such treatment and shoes" (ECF No. 59 at 19)—it is devoid of any facts that suggest that Defendants Glynn and Seeley harbored any hostility toward Plaintiff individually and that as a result of such hostility, the Defendants intentionally treated Plaintiff differently from other similarly situated individuals.

Accordingly, the Court finds that Plaintiff's Third Amended Complaint fails to plead a plausible equal protection claim against Defendants Glynn and Seeley and recommends that, with respect to this claim, Defendants' Motion to Dismiss (ECF No. 63) be **GRANTED**. However, because it is not absolutely clear the deficiencies in Plaintiff's Third Amended Complaint with respect to this claim cannot be cured by amendment, the Court recommends Plaintiff's equal protection claim against Defendants Glynn and Seeley be **DENIED without prejudice and with leave to amend**.

### iii. *Defendant Zamora*

Similarly, the Court finds Plaintiff's Third Amended Complaint fails to plead any facts that support a plausible equal protection claim against Defendant Zamora. First, Plaintiff fails to allege any facts that suggest Defendant Zamora acted with an intent or purpose to discriminate against Plaintiff based on Plaintiff's membership in a protected class. The Third Amended Complaint is devoid of any facts connecting any intentional conduct by Defendant Zamora to Plaintiff's protected class status. (*See* ECF No. 59 at 25–26.)

Second, Plaintiff's Third Amended Complaint fails to allege any facts that suggest Defendant Zamora intentionally treated Plaintiff differently from other similarly situated prisoners. While the Third Amended Complaint does allege facts that suggest Plaintiff was treated differently from other similarly situated prisoners (discussed above), the Third Amended Complaint fails to allege any facts that suggest Defendant Zamora harbored any hostility toward Plaintiff individually and that as a result of such hostility, she intentionally treated Plaintiff differently from other similarly situated individuals.

Furthermore, even if Defendant Zamora treated Plaintiff differently from other similarly situated prisoners, Defendant Zamora's response to Plaintiff's third-level

grievance, which is attached to the Third Amended Complaint, demonstrates she had a rational basis for doing so. Defendant Zamora's third-level response states that Plaintiff was evaluated by medical staff with respect to his appeal issues and it was determined by licensed clinical staff that Plaintiff's current medical treatment from his condition is adequate and appropriate and that he does not meet the criteria for the specific medication he desires. (ECF No. 59 at 37.) In addition, Defendant Zamora's third-level response indicates that under California law, prisoners may not demand that they be prescribed certain medications. (*Id.*) Therefore, Defendant Zamora had a rational basis for denying Plaintiff's third-level grievance, and the Court cannot draw from Plaintiff's Third Amended Complaint the reasonable inference that Defendant Zamora intentionally treated Plaintiff differently from other similarly situated prisoner's without a rational basis for such different treatment.

Accordingly, the Court finds that Plaintiff's Third Amended Complaint fails to plead a plausible equal protection claim against Defendant Zamora and recommends that, with respect to this claim, Defendants' Motion to Dismiss (ECF No. 69) be **GRANTED**. However, because it is not absolutely clear the deficiencies in Plaintiff's Third Amended Complaint with respect to this claim cannot be cured by amendment, the Court recommends Plaintiff's equal protection claim against Defendant Zamora be **DENIED without prejudice and with leave to amend**.

## C.   Plaintiff's Request for Appointment of Expert

Plaintiff's Opposition to Defendants' Motion to Dismiss Claims Against Defendants Glynn and Seeley (ECF No. 63) contains a request that the Court grant Plaintiff an expert witness. (ECF No. 72 at 7–8.) For its failure to comply with the Court's Local Rules, the Court recommends that Plaintiff's request be **DENIED without prejudice**. Should Plaintiff still desire to request the appointment of an expert in this case, he must file his request in the form of a separate written motion that complies with the requirements set forth in Civil Local Rule 7.1.

## V. CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) accepting this Report and Recommendation; (2) **GRANTING** Defendants' Motions to Dismiss (ECF Nos. 63 and 69); (3) **DENYING with prejudice** Plaintiff's Eighth Amendment claims against Defendants Glynn, Seeley, and Zamora; and (4) **DENYING without prejudice and with leave to amend** Plaintiff's equal protection claims against Defendants Glynn, Seeley, and Zamora.

**IT IS ORDERED** that no later than **August 19, 2016**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 26, 2016**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  July 29, 2016

Hon. Jill L. Burkhardt
United States Magistrate Judge