UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ARELLANO, JR., <br><br>　　　　　　　　　　Plaintiff, <br><br>v. <br><br>OFFICER HODGE, et al., <br><br>　　　　　　　　　　Defendants. | Case No.: 3:14-cv-00590-RBM-JLB <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** <br><br> **[Doc. 321]** |

Pending before the Court is Plaintiff Raul Arellano, Jr.'s ("Plaintiff") Motion for Reconsideration "as to Dismissal of Trial, and for Court to Grant New Trial" ("Motion"), filed on June 16, 2023. (Doc. 321.) On June 28, 2023, Defendants filed an Opposition to Plaintiff's Motion ("Opposition"). (Doc. 324.) On July 26, 2023, Plaintiff filed a Reply ("Reply"). (Doc. 326.)

The Court finds this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, Plaintiff's Motion is **DENIED**.

### I.　BACKGROUND

**A.　Factual and Procedural Background**

Plaintiff filed the present case on March 13, 2014. (Doc. 1.) Discovery initially closed on October 20, 2017. (Doc. 139 at 2.) On November 16, 2021, following Plaintiff's

partial success on summary judgment (Docs. 164, 230),[1] the Court granted Plaintiff's motion to appoint counsel and appointed pro bono counsel —Michael S. Pedretti— pursuant to 28 U.S.C. § 1915(e)(1) and General Order 596. (Docs. 234, 240.) On February 24, 2022, the Court granted the parties' joint stipulation to reopen discovery, which was to be completed on or before June 17, 2022. (Docs. 244, 245.) On June 9, 2022, the parties filed a joint motion to extend the discovery deadline from June 17, 2022 to September 16, 2022, which was granted. (Docs. 248, 249.)

The Court issued a jury trial preparation and scheduling order setting trial for November 14, 2022. (Doc. 261.) The Court continued trial to March 13, 2023 pursuant to the parties' joint motion and after a Status Conference on September 27, 222. (Docs. 262, 264, 265.) The parties filed their memorandums of contentions of law and fact, pretrial disclosure, and proposed jury instructions on December 29, 2022 and December 30, 2022. (Docs. 266–70.) On February 6, 2023, the parties appeared for a final pretrial conference. (Doc. 275.) On March 3, 2023, Plaintiff moved to continue the trial because Plaintiff had been unable to meet with counsel because he was housed in a COVID-19 outbreak quarantined unit. (Doc. 297.) On March 15, 2023, the Court continued trial to May 15, 2023. (Doc. 305 at 1–2.) On April 24, 2023, the Court set a trial readiness conference for May 9, 2023. (Doc. 308.)

On May 4, 2023—less than two weeks before trial—Plaintiff filed a motion asking to replace his appointed pro bono counsel with "Raul Arellano, Pro Se." (Doc. 311.) At the May 9, 2023 conference and hearing on Plaintiff's motion, the Court stated:

> I'm in receipt of the proposed voir dire questions, jury instructions, verdict form. And, also, you filed the deposition chart and deposition transcript related to Ms. Velardi appearing via deposition. We also have the set of trial binders that you've submitted. So we're all set to start trial on Monday except for the recent filing related to plaintiff's counsel.

---

[1] On October 18, 2021, two of Plaintiff's cases were consolidated, Case Nos. 14-cv-590 and 15-cv-2247. (Doc. 239.)

(Doc. 323 at 3:25–4:6.)  The Court also stated:

> As indicated in the order appointing Mr. Pedretti, our court's pro bono panel is a limited resource, and Plaintiff is not entitled to appointment of counsel of his choosing.  If Mr. Pedretti were permitted to withdraw, Plaintiff will not have new counsel appointed.  And whether Mr. Pedretti is or not representing the plaintiff, this trial will not be continued.  So we'll begin trial on Monday.

(*Id.* at 4:20–5:1.)  The Court then asked Plaintiff if he would proceed with his appointed counsel.  (*Id.* at 5:2–3.)  Plaintiff responded that he did not agree with "the tactics" that his counsel was "going to be presenting" and how his counsel was "going to go forward with the trial and the evidence that [was] going to be presented." (*Id.* at 5:8–10.)  The Court then reminded Plaintiff that the trial would not be continued.  (*Id.* at 6:16–17.)  Plaintiff responded, "[o]kay.  Then I'll show up."  (*Id.* at 6:18.)  The Court responded, "Well, yes.  You need to show up because … this is your case."  (*Id.* at 6:20–24.)  The Court then stated:

> Mr. Arellano, the only question is whether we can proceed to trial with Mr. Pedretti as your counsel.  We're not continuing the trial.  You will not be given any breaks, special considerations.  You're going to be held to the same standard as that of an attorney.  The Court's not making copies for you of any documents or providing you with any special resources.  We're not making any arrangements, like Mr. Pedretti had already, with respect to your dressing out. … We start trial on Monday.  You're not going to get a continuance.  Okay?  You have good counsel right now representing you.  Right?  And he's made all these arrangements.  My question to you is can we proceed to trial with Mr. Pedretti as your counsel?  That's the question.

(*Id.* at 7:7–8:7.)  Plaintiff then responded, "I need to represent myself.  I'm going to need to represent myself, and then I'm going to ask for a continuance, and then it's going to be denied, and then … there's going to be an appeal."  (*Id.* at 8:24–9:4.)  The Court responded:

> There is no continuance. It's not going to be continued.  So we're starting on Monday. … And if you refuse to come on Monday, it's not going to be continued.  Do you understand that?  It's not going to be continued.   So do you wish to proceed with counsel on Monday?  … Look, sir, we're going to start trial – you're going to start trial Monday.  That's it.  There's no continuances.  You'll be able to meet here with your attorney, and we're going to start trial. … You have counsel.  And that's why I'm asking you, just so we're clear, can we proceed with – to trial with Mr. Pedretti as your counsel?

3

> … Trial is starting on Monday. You're not going to get any additional time. We're not going to push this. Okay? So knowing that … can we proceed to trial with Mr. Pedretti as your counsel? Because we're starting Monday.

(*Id.* at 9:5–10:20.) Plaintiff responded, "[a]h … no." (*Id.* at 10:22.) The Court then relieved Mr. Pedretti as counsel and informed the parties that trial would proceed on Monday at 8:30 a.m. (*Id.* at 10:23–11:7.)

Plaintiff did not appear for the first day of trial. (Doc. 318 at 4:2–4 ("Let the record reflect that [Plaintiff] is not present. It is my understanding that [Plaintiff] refused to be transported to come to court.").) Transport Officer Henry Martinez confirmed on the record that Plaintiff refused to be transported to the courthouse. (*Id.* at 5:1–4.) Officer Martinez testified that "[Plaintiff] stated that he did not want to come to court because he's having mental health issues. He's having anxiety. He's having stress over this matter. … So, for that reason, he said he's not mentally prepared to come to court." (*Id.* at 5:9–19.) Officer Martinez then confirmed again on the record that Plaintiff refused to be transported to the courthouse. (*Id.* at 5:20–22.)

Officer Martinez also testified that Plaintiff did not appear to be "in any visual distress. [Plaintiff] was just making reference to the fact that he wasn't ready for this, and he was having anxiety over it. He hasn't been able to sleep, things of that nature." (*Id.* at 6:5–14.) Officer Martinez testified that Plaintiff told him that "he belonged to the triple BMS (phonetic) program, which is inmates that have a mental disability of some sort." (*Id.* at 6:15–20.) The Court then ruled:

> At the trial readiness conference on May 9th, the Court addressed Mr. Arellano's motion to [represent] himself and dismiss his pro bono counsel, Mr. Pedretti. The Court asked Mr. Arellano numerous times if we could proceed with Mr. Pedretti as his counsel. Mr. Arellano chose to represent himself and have his pro bono counsel discharged. Let the record further reflect that at the trial readiness conference, the Court warned Mr. Arellano that the case would not be continued. And that if he failed to come to court, it would result in dismissal of the case. Given the sworn testimony of Officer Martinez and that plaintiff refused to be transported to come to court to prosecute the case, the case [14-cv-590 and 15-cv-2247] is dismissed with

prejudice. (*Id.* at 7:6–8:2.) The Court then sent the jury waiting outside back to jury department. (*Id.* at 8:9–11.)

**B.     Plaintiff's Motion**

In his Motion, Plaintiff asks the Court to grant him a new trial because, on May 15, 2023, when he was supposed to appear for trial, he could not come "due to a mental breakdown involving depression, anxiety attack, suicidal thoughts, and severely mental health circumstances." (Doc. 321 at 2 (cleaned up).) Plaintiff asserts that he submitted mental health request forms on May 14th, 15th, and 16th stating that he needed to talk to his psychologist—Dr. Hauser. (*Id.*) Plaintiff attached these mental health forms as Exhibit A to his Motion. (Doc. 321-1.)[2] On May 15, 2023, Plaintiff wrote, "I have severe anxiety, depression, that has cause[d] me unable to sleep or concentrate …." (*Id.* at 2.) On May 16, 2023, Plaintiff wrote that that he needed "to see MH due to severe depression, anxiety, and … bad thoughts." (*Id.* at 3.)

Plaintiff then asserts that he did not see Dr. Hauser until May 26, 2023. (Doc. 321 at 2.) Plaintiff contends that he told Dr. Hauser (1) that May was the month that his sister who he raised died in 2021, (2) that his baby's mother and his daughter had a hearing where his daughter testified against her stepfather regarding child abuse, (3) that he felt like he let his daughter down for not being there and it made him think of things that happened to him when he was young, and (4) that he was experiencing anxiety due to the fact that trial was going to start, that he had not received any documents from his attorney, and that he was not granted an extension of time. (*Id.*) Plaintiff attaches the report from this visit as Exhibit

---

[2] These forms were submitted on May 15th, 16th, and 26th, but not May 14th. (*See generally* Doc. 321-1.) The May 26th form appears to be unrelated to any mental health symptoms. (Doc. 321-1 at 4 (describing the reason he is requesting health care services as having a sore throat, chills, fever, headache, body aches, and need to see a doctor because he cannot sleep due to problems breathing and a sore throat).)

5

1  B to his Motion. (Doc. 321-2.)³  According to Dr. Hauser's report, Plaintiff told Dr. Hauser
2  that "he had been struggling with the approaching date of his sister's death" and that "he
3  has stressful court proceedings and information from his family that was anxiety
4  provoking." (*Id.* at 2.)  Dr. Hauser wrote in her report that Plaintiff was well groomed,
5  maintained consistent eye contact, had a pleasant and attentive attitude, had good attention
6  and concentration, had linear and reality-based thoughts, and "appeared oriented on all
7  spheres." (*Id.*)

   Plaintiff then argues that he "was incompetent to stand trial" and that he was not
9  competent as a *pro se* "to present a defense, go through the process of choosing a jury, and
10 all process that [are] suppose[d] to be done at [t]rial. (Doc. 321 at 2–3.)  Plaintiff also
11 contends that his mental health issues rendered him "[delusional], hearing voices, which
12 such cause for [him] to be unable to comprehend legal concepts." (*Id.* at 3, 5.)  Plaintiff
13 cites numerous cases regarding the standard for competency to stand trial in criminal cases
14 and the Court's obligation to *sua sponte* call for a competency hearing in certain
15 circumstances. (*Id.* at 3–4.)  Plaintiff also argues that the Court should have considered
16 other alternatives to dismissal. (*Id.* at 4–5 (citing *Hernandez v. Whiting*, 881 F.2d 768,
17 770–72 (9th Cir. 1989)).)  Specifically, Plaintiff suggests trial could have been held "in
18 whole or in part at the prison," "could have proceeded with [his] deposition," proceeded
19 "by affidavit," or been "extended" based on his incompetency. (*Id.* at 5.)  Plaintiff
20 concludes that "[he] would like to get a new date for trial." (*Id.* at 6.)

21 **C.     Defendant's Opposition**

22     In their Opposition, Defendants note that "[Plaintiff] does not specify the rule under
23 which he seeks reconsideration of the dismissal order" but that Federal Rule of Civil
24 Procedure 60(b) would be the only proper avenue for Plaintiff's Motion given Plaintiff's
25 failure to file his Motion within 28 days under Rule 59(e). (Doc. 324 at 4.)  Defendants

---

³ The Court notes that this visit was dated May 23, 2023, not May 26, 2023. (Doc. 321-2.)

then argue that Plaintiff does not appear to rely on the first five grounds of Rule 60(b) and has not shown "extraordinary circumstances" justifying relief under Rule 60(b)(6)—the rule's catch-all provision. (*Id.* at 4–7.) Specifically, Defendants argue that Plaintiff's generalized anxiety, depression, difficulty sleeping/concentrating, and "bad thoughts," do not constitute "extraordinary circumstances" justifying Plaintiff's refusal to attend trial in a case that he filed. (*Id.* at 5.) Defendants argue that Officer Martinez's testimony only supports a finding that Plaintiff was experiencing generalized anxiety and depression at the prospect of going trial, which is normal for any party or counsel gearing up for trial. (*Id.* at 5–6.) Defendants also argue that Plaintiff was filing motions and requests in his other litigations during the time that he now insists he was suffering a mental breakdown rendering him incompetent to attend trial, undermining Plaintiff's assertion that he was suffering a severe mental breakdown during this time. (*Id.* at 6.) Defendants then distinguish this case from *Hernandez v. Whiting*, where the court did not arrange for the pro se plaintiff to be transported to trial. (*Id.* at 6–7.)

Defendants also request that the Court explicitly analyze the failure-to-prosecute factors in resolving Plaintiff's Motion. (*Id.* at 7.) Defendants contend that all of the relevant factors weigh in favor of the Court's dismissal for failure to prosecute. (*Id.* at 7–9.) Specifically, Defendants argue that (1) Plaintiff was not diligent in bringing the case to trial, (2) the Court's need to manage its own docket and the public's interest in expeditious litigation weigh in favor of dismissal, (3) Defendants will be prejudiced if dismissal is reversed, and (4) that lesser sanctions would not deter Plaintiff's conduct. (*Id.* at 8–9.) Defendants also argue that, while the general preference is to resolve cases on their merits, Plaintiff's own decision to "halt movement towards a merits resolution should substantially neutralize the negative effect of this factor." (*Id.* at 9 (internal quotation marks omitted) (citing *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1237 (9th Cir. 2006).)

Finally, Defendants argue that relief under Rule 59(e) is appropriate only where "'(1) the district court is presented with newly discovered evidence, (2) the district court

committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law[,]'" none of which are present here. (*Id.* at 9–10 (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001).)

**D.    Plaintiff's Reply**

In his Reply, Plaintiff responds that his "suicidal ideation and out of control anxiety, panic attack had almost nothing to do with trial." (Doc. 326 at 2.) Plaintiff contends that the circumstances of his sister's death, for which he feels responsible, as well as flashbacks of being abused as child, triggered by news that his daughter suffered at the hands of a predator, are sufficient to constitute "exceptional circumstances." (*Id.* at 3.) Plaintiff asserts that it was these two topics that rendered him unable to proceed to trial. (*Id.*)

## II.    DISCUSSION

**A.    Rule 41(b) Dismissal for Failure to Prosecute**

As stated above, Defendants request that the Court explicitly analyze the failure-to-prosecute factors in resolving Plaintiff's Motion. (Doc. 324 at 7.) Defendants then argue that all of the relevant factors weigh in favor of the Court's decision to dismiss Plaintiff's case with prejudice. (*Id.* at 7–9.) The Court grants Defendants' request.

Federal Rule of Civil Procedure 41(b) provides, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Such a dismissal is considered an adjudication on the merits. *Id.* A district court may dismiss an action under Rule 41(b) *sua sponte*. *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962) ("Petitioner contends that the language of this Rule, by negative implication, prohibits involuntary dismissals for failure of the plaintiff to prosecute except upon motion by the defendant. … We do not read Rule 41(b) as implying any such restriction.").

"Under this rule, plaintiffs must prosecute their claims with 'reasonable diligence' to avoid dismissal." *Thompson v. Gomez*, Case No. 1:18-cv-00125-SAB (PC), 2022 WL 10140852, at *1 (E.D. Cal. Oct. 17, 2022) (citing *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976)). "'The power to invoke this sanction is necessary in order to prevent

undue delays in the disposition of pending cases and to avoid congestion in the calendar of the District Courts.'" *Id.* (quoting *Link*, 370 U.S. at 629–630).

"In determining whether to dismiss an action for failure to prosecute or failure to comply with court orders or the local rules, a district court should consider the following five factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Id.* (citing *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1226–1228, 1234–1252). "In the Ninth Circuit, a finding of willfulness or bad faith is not required to dismiss an action under Rule 41(b)." *Id.* (citing *Henderson, v. Duncan*, 779 F.2d 1421, 1425 (9th Cir. 1986)).

The Ninth Circuit and numerous district courts in California have held that the failure to appear for trial warrants dismissal of an action with prejudice. *See e.g.*, *Huey v. Teledyne, Inc.*, 608 F.2d 1234, 1237–38 (9th Cir. 1979) (finding the district court had discretion to dismiss case with prejudice when plaintiff's counsel failed to appear for trial); *Anderson v. Hughes Helicopters, Inc.*, 865 F.2d 263 (9th Cir. 1988) (affirming dismissal of action when the pro se plaintiff failed to appear for trial); *Al-Torki v. Kaempen*, 78 F.3d 1381, 1385 (9th Cir. 1996) ("Failure to appear for trial … prejudices an adversary and interferes with the court's docket about as much as any procedural default can."); *Beard-Williams v. Palmdale Sch. Dist. (PSD)*, 65 F. App'x 114, 115 (9th Cir. 2003) (affirming dismissal of action when pro se plaintiff failed to appear for sixth day of her jury trial); *Thompson*, 2022 WL 10140852, at *1 (dismissing action because pro se plaintiff failed to appear for his jury trial).

1.  **Public's Interest in Expeditious Resolution of Litigation and the Court's Need to Manage its Docket**

Here, Plaintiff was appointed pro bono counsel to represent him during trial. (*See* Docs. 234, 240.) Pro bono counsel then spent more than a year preparing for trial which, after several continuances, was ultimately scheduled for May 15, 2023. (Doc. 305 at 1–2.)

Less than two weeks before trial, Plaintiff filed a motion asking to replace pro bono counsel with himself. (Doc. 311.) At a hearing on Plaintiff's motion, the Court noted that the parties were "all set to start trial" and warned Plaintiff numerous times that his trial would not be continued. (Doc. 323 at 3–10.) Despite the Court's warnings about the challenges of proceeding without counsel and that he would not receive a continuance of the trial, Plaintiff decided to proceed without counsel. (*See id.* at 7–10.) Plaintiff then refused to appear for the first day of trial. (Doc. 318 at 4–5.)

Under these circumstances, the first two factors—the public's interest in expeditious resolution of litigation and the court's need to manage its docket—weigh strongly in favor of dismissing Plaintiff's case with prejudice. Here, as in *Thompson*, Plaintiff failed to appear for his jury trial despite being ordered to do so. 2022 WL 10140852, at *2. As the court noted in *Thompson*, "[i]t is Plaintiff's responsibility to move this action forward …. This case cannot simply remain idle on the Court's docket, unprosecuted." *Id.* Here, the present case had been pending for more than nine years and both parties were prepared for trial when Plaintiff suddenly chose to discharge his counsel and refused to appear for trial, strongly undermining the public's interest in the expeditious resolution of this litigation and the Court's ability to manage its own docket. The obstruction of the Court's ability to manage its docket is particularly obvious here when the Court has explicitly, clearly, and repeatedly told Plaintiff he would not get a continuance. To have granted that continuance, with a jury in the hall, counsel for the parties and the parties sitting in the courtroom ready to proceed to trial because Plaintiff refused to show up would effectively pass off the Court's management of its own docket to Plaintiff. Plaintiff should not be permitted to continue to "undermine[] the orderly administration of justice and result[] in the expenditure of irreplaceable judicial resources." *Id.*

### 2. Risk of Prejudice to Defendants

The third factor—the risk of prejudice to the defendants—also weighs in favor of dismissing Plaintiff's case with prejudice. As in *Thompson*, Defendants expended time and incurred substantial costs in preparing their case and appearing for trial on May 15,

2023. *Id.* This is evident even just from the Court's listing of everything that had been done even before the start of trial. (Doc. 323 at 3:25–4:4 ("I'm in receipt of the proposed voir dire questions, jury instructions, verdict form, [a]nd also, you filed the deposition chart and deposition transcript … and [w]e also have the set of trial binders that you've submitted.").) The individual Defendants and their counsel were present and ready to proceed on the date set for trial when Plaintiff refused to come to court for trial. (Doc. 318 at 3:10–16.) "Thus, Defendants have clearly been prejudiced by Plaintiff's failure to appear for the jury trial." *Thompson*, 2022 WL 10140852, at *2 (explaining that defendants "expended time and incurred substantial costs in preparing their case, arranging for witnesses to travel and testify, appearing for trial [and noting] all [d]efendants, as well as defense counsel, appeared in-person … and were ready to proceed with the jury trial.") Additionally, the Court's many warnings that no continuances would be granted, Plaintiff's indication at the hearing on his motion to proceed on his own behalf that he would "show up," (Doc. at 6:18) and his failure to ultimately even come to court suggest Plaintiff may have not ever intended to litigate this case to trial which give rise to a presumption of prejudice. *Thompson*, 2022 WL 10140852, at *2 (finding a plaintiff's "failure to comply indicate[d] [that] Plaintiff [did] not intend to litigate this action. … Since Plaintiff [did] not intend to litigate this action there [arose] a rebuttable presumption of prejudice to the defendants in this action." (citing *In re Eisen*, 31 F.3d 1447, 1452–53 (9th Cir. 1994)). It is abundantly clear that Defendants have been prejudiced by Plaintiff's failure to appear for trial.

### 3.     Availability of Less Drastic Sanctions

The fifth factor—the availability of less drastic sanctions—also weighs in favor of dismissing Plaintiff's case with prejudice because "a court's warning to a party that their failure to obey the court's order will result in dismissal satisfies the 'consideration of alternatives' requirement." *Id.* (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) ("[O]ur decisions also suggest that a district court's warning to a party that his failure to obey the court's order will result in dismissal can satisfy the 'consideration of

alternatives' requirement.")). Here, Plaintiff was informed by the Court numerous times that trial would not be continued. (*See* Doc. 323 at 5–10.) Further, Plaintiff's statement that "[he was] going to need to represent [himself], and then [he was] going to ask for a continuance, and then it's going to be denied, and then … there's going to be an appeal[,]" indicates that Plaintiff was aware of the consequences of proceeding without counsel and not appearing for trial. (*See id.* at 8–9.) Additionally, the Court told Plaintiff right after he made that statement that, "[t]here is no continuance. It's not going to be continued. So we are starting on Monday." (Doc. 323 at 9:5–6.) Nevertheless, Plaintiff refused to come to trial. (Doc. 318 at 4–5.) It is apparent that Plaintiff was attempting to get the continuance he was repeatedly denied by not showing up for trial in direct defiance of the Court warnings. There were no less drastic sanctions available when Plaintiff failed to appear for trial. Plaintiff is in custody and proceeding pro se with no ability to pay a monetary sanction. When Plaintiff did not appear for trial, the only alternative to dismissal was a continuance and that would not have been a sanction at all.

### 4. Public Policy Favoring Disposition of Cases on Their Merits

Finally, while the fourth factor—the "public policy favoring disposition of cases on the merits—normally weighs against dismissal[,] … [n]oncompliant plaintiffs bear responsibility for halting movement toward a merits resolution." *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1237. "This substantially neutralizes the negative effect of this factor in the context of this proceeding." *Id.* Further, this one factor does not preclude dismissal when the other factors weigh in favor of dismissal, as they do here. *See Al-Torki*, 78 F.3d 1385 ("Although any such dismissal and default prevents disposition on the merits … the culpability of a willful failure to appear for trial, and the prejudice to the side which does appear for trial, as well as the interference with the court's docket, may be held by the district court to outweigh those factors."); *see also Thompson*, 2022 WL 10140852, at *2 ("The public policy in favor of deciding cases on their merits is greatly outweighed by the factors in favor of dismissal."). Here, Plaintiff must bear responsibility for discharging his counsel less than two weeks before trial and then failing to appear at trial despite numerous

warnings by the Court that trial would not be continued. Further, as discussed above, all other factors weigh in favor of dismissal. Thus, despite the general preference to decide cases on their merits, the Court finds that dismissal with prejudice was warranted in this case.

**B.  Rule 60(b)(6) Motion for Relief from Judgment**

Civil Local Rule 7.1(i) outlines the proper procedures for applications for reconsideration:

> 1. Whenever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part, … it will be the continuing duty of each party and attorney seeking such relief to present to the judge to whom any subsequent application is made an affidavit of a party or witness or certified statement of an attorney setting forth the material facts and circumstances surrounding each prior application, including inter alia: … what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application.
>
> 2. Except as may be allowed under Rules 59 and 60 of the Federal Rules of Civil Procedure, any motion or application for reconsideration must be filed within twenty-eight (28) days after the entry of the ruling, order or judgment sought to be reconsidered.

Civ. L.R. 7.1(i). Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." However, "[a] motion under Rule 60(b)(6) 'must be made within a reasonable time.'" *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010) (quoting Fed. R. Civ. P. 60(c)(1)).

Here, the Court dismissed with prejudice this consolidated case on May 15, 2023. (Doc. 316.) However, Plaintiff did not send his Motion to the prison mail system until June 13, 2023—approximately 29 days after dismissal. (Doc. 321.) Applying that date, Plaintiff's Motion is not timely under either Civil Local Rule 7.1(i) or Federal Rule of Civil Procedure 59(e). However, the court finds that, despite this short delay, Plaintiff filed his Motion within "a reasonable time." Fed. R. Civ. P. 60(c)(1). Therefore, the Court will treat Plaintiff's Motion as a Rule 60(b) motion for relief from judgment.

///

Rule 60(b) list the reasons justifying relief from a final judgment or order:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Here, Plaintiff has not presented evidence of mistake, inadvertence, surprise, or excusable neglect, newly discovered evidence, or fraud. Likewise, Plaintiff does not assert that the judgment is void or that judgment has been satisfied, released, or discharged. Thus, the present Motion could only be brought under Rule 60(b)(6).

The Ninth Circuit uses "Rule 60(b)(6) 'sparingly as an equitable remedy to prevent manifest injustice.'" *Lal*, 610 F.3d at 524 (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)). "To receive relief under Rule 60(b)(6), a party must demonstrate 'extraordinary circumstances which prevented or rendered him unable to prosecute [his case].'" *Id.* at 521, 524; *see also Walker v. Krol*, Case No. 15-cv-05819-HSG, 2022 WL 3017518, at *3 (N.D. Cal. July 29, 2022) (prisoner pro se plaintiff's assertion that he was unable to litigate his case for four years because he was mentally impaired due to being forcibly administered anti-psychotic medication did not constitute "extraordinary circumstances" warranting relief under Rule 60(b)(6)); *Jeffries v. Los Angeles Sheriff Dep't*, Case No. CV 17-424-AB (KK), 2019 WL 13036244, at *3 (C.D. Cal. Dec. 6, 2019) (finding that Plaintiff failed to show "manifest injustice" or "extraordinary circumstances" that would warrant relief pursuant to Rule 60(b)(6)). "'[A] party seeking to reopen a case under Rule 60(b)(6) must [also] demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion.'" *Arzate v. Colvin*, Case No. CV 16-07228-

1  DOC (DTB), 2017 WL 4685545, at *1 (C.D. Cal. Feb. 8, 2017) (quoting *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008)).

Here, Plaintiff filed a motion asking to replace his counsel and proceed *pro se* less than two weeks before trial. (Doc. 311.) At a hearing on Plaintiff's motion, the Court repeatedly warned Plaintiff that his trial would not be continued even if he chose to proceed without appointed counsel. (Doc. 323 at 3–10.) Despite the Court's warnings, Plaintiff decided to proceed without his counsel and then refused to appear for his trial. (*Id.* at 9–10; Doc. 318 at 4–5.) These circumstances were not beyond Plaintiff's control, as required for Rule 60(b)(6) relief. *See Arzate*, 2017 WL 4685545, at *1. Plaintiff had the option to proceed to trial—with or without counsel—but chose not to despite multiple warnings.

Plaintiff contends that he was suffering from a mental breakdown involving suicidal thoughts, delusions, and hearing voices due to the anniversary of his sister's death, news from his family, and childhood trauma that prevented him from appearing for trial. (*See* Doc. 321 at 2–3, 5; Doc. 326 at 2–3.) However, the mental health forms attached to Plaintiff's Motion only indicate that he was experiencing anxiety, depression, bad thoughts, trouble sleeping and concentrating, and flu-like symptoms. (*See* Doc. 321-1 at 2–4.) Plaintiff did not mention that he was having a "mental breakdown," including suicidal thoughts, delusions, and hearing voices. Further, in her report, Dr. Hauser indicated that Plaintiff was well groomed, maintained consistent eye contact, had a pleasant and attentive attitude, had good attention and concentration, had linear and reality-based thoughts, and "appeared oriented on all spheres." (Doc. 321-2 at 2.) In other words, the medical documentation provided by Plaintiff does not substantiate his claims.

Plaintiff's contentions are also inconsistent with Officer Martinez's testimony, who stated that Plaintiff did not want to come to court because he was having anxiety and stress over this matter. (Doc. 318 at 5–6.) Officer Martinez also testified that Plaintiff did not appear to be in any distress. (*Id.* at 6.) Therefore, at most, the evidence suggests that Plaintiff was experiencing some anxiety and depression, which, while unfortunate, does not constitute "extraordinary circumstances" warranting Rule 60(b)(6) relief.

  The Court also agrees with Defendants that Plaintiff's litigation activity undermines Plaintiff's assertion that he was suffering a severe mental breakdown that prevented him from attending trial on May 15, 2023.[4] For example, on May 8, 2023, Plaintiff filed a motion for leave to file a sur-reply in another matter that was pending before this Court. (*See* Case No. 3:20-cv-00228-RBM-LR, Doc. 70.) On May 24, 2023, Plaintiff attended a settlement conference in this same matter. (*See id.* at Doc. 72.) Further, on May 11, 2023, Plaintiff prepared a motion for extension of time filed with the Ninth Circuit, in which he wrote, "I would like to ask for an exten[s]ion of time to file the reply because on May 15th I [h]ave [t]rial and am … representing myself (pro-per)." (*See* Case No. 21-56249, Doc. 33.) However, the plaintiff mail system did not receive this motion until May 17, 2023, two days after trial was supposed to begin. (*Id.* at 3.) Finally, on June 2, 2023, Plaintiff prepared a motion for reconsideration and a notice of appeal in another matter that was pending before this Court. (*See* Case No. 3:20-cv-01633-RBM-DDL, Doc. 79 at 2.) It is irreconcilable that Plaintiff managed to litigate his other cases in or around the time he was allegedly experiencing a severe mental breakdown involving suicidal thoughts, delusions, and hearing voices but could not manage to appear for trial.

  Finally, the Court also agrees with Defendants that the present case is distinguishable from *Hernandez v. Whiting*. 881 F.2d at 770–72. In *Hernandez*, the prisoner pro se plaintiff "pursued his case up to trial as diligently as a pro se plaintiff could have been expected to perform[.]" *Id.* at 772. Further, "the district court knew before trial, or at least should have surmised, that [the plaintiff's] imprisonment would be a barrier to his attendance at trial" and that his "testimony was crucial to his case[.]" *Id.* Nevertheless, the district judge improperly dismissed the plaintiff's case as a first response to the

---

[4] The Court may take judicial notice of court filings and other matters of public record, including docket entries. *See Davidson v. O'Reilly Auto Enterprises, LLC*, 968 F.3d 955, 974, n.5 (9th Cir. 2020); *Mahoney v. Sessions*, 871 F.3d 873, 877, n.2 (9th Cir. 2017); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

1  plaintiff's failure to appear for trial.  *Id*.  Here, unlike the court in *Hernandez*, the Court
2  ordered the California Department of Corrections and Rehabilitation and Warden James
3  Holl to produce Plaintiff for trial.  (*See* Doc. 306.)  However, when Officer Martinez
4  arrived to transport Plaintiff to trial, Plaintiff refused to go.  Further, Plaintiff has not
5  diligently litigated his case.  This case had been pending more than nine years when
6  Plaintiff suddenly chose to discharge his counsel and then refused to appear for trial despite
7  repeated warning from the Court that further continuances would not be permitted.

8       In sum, the Court finds that there are no "extraordinary circumstances" present
9  warranting Rule 60(b)(6) relief, and Plaintiff's Motion must be denied.

### III.  CONCLUSION

Based on the foregoing, Plaintiff's Motion is **DENIED**.

**IT IS SO ORDERED.**

DATE:  March 25, 2024

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE